UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| LML Patent Corp., <br><br> Plaintiff, <br><br> vs. <br><br> JPMorgan Chase & Co., et. al. <br><br> Defendants. | Case No. 2:08-cv-448-DF |

**DEFENDANTS JPMORGAN CHASE & CO. AND JPMORGAN CHASE BANK, N.A.'S
REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT
OF INVALIDITY OF THE ASSERTED CLAIMS OF
UNITED STATES PATENT NO. RE40,220**

# TABLE OF CONTENTS

I.   LML'S ARGUMENTS FAIL TO RESCUE THE '220 PATENT. ..................................... 1

II.  LIKE THE FINANCIAL TRANSACTION PATENT IN *BILSKI*, THE '220 PATENT CLAIMS UNPATENTABLY ABSTRACT SUBJECT MATTER. ................... 3

III. LML FAILS TO SHOW THAT THE ASSERTED CLAIMS PASS THE "MACHINE-OR-TRANSFORMATION" TEST. ............................................................... 4

CONCLUSION ................................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abstrax, Inc. v. Dell, Inc.*,
  No. 2:07-cv-221-DF-CE, 2009 WL 3255085 at *3 (E.D. Tex. Oct. 7, 2009) .......................... 7

*Bilski v. Kappos*,
  130 S. Ct. 3218, 3231 (2010) ................................................................................ passim

*Cybersource Corp. v. Retail Decisions, Inc.*,
  620 F. Supp. 2d 1068, 1077 (N.D. Cal. 2009) ........................................................... 5, 7

*Diamond v. Diehr*,
  450 U.S. 175 (1981) ................................................................................................. 1, 2

*Gottschalk v. Benson*,
  409 U.S. 63 (1972) ................................................................................................. 1, 2, 3

*In re Bilski*,
  545 F.3d 943, 963–64 (Fed. Cir, 2008) .................................................................... 7, 9

*In re Ferguson*,
  558 F.3d 1359, 1364 (Fed. Cir. 2009) .......................................................................... 5

*In re Schrader*,
  220 F.3d 290, 294 (Fed. Cir. 1994) .............................................................................. 7

*In re Walter*,
  618 F.2d 758, 768–69 (C.C.P.A. 1980) ....................................................................... 9

*King Pharmaceuticals, Inc. v. Eon Labs, Inc.*,
  Nos. 2009-1437, 2009-1438, 2010 WL 3001333, at *9 (Fed. Cir. Aug. 2, 2010) ........ 2

*Parker v. Flook*,
  437 U.S. 584 (1978) ............................................................................................. 1, 2, 7

*Ultramercial, LLC v. Hulu, LLC*,
  No. CV-09-6918 RGK, slip op. at 4 (C.D. Cal. Aug. 13, 2010) ................................. 5, 8

**OTHER AUTHORITIES**

Local Rule CV-7(a)(1) ........................................................................................................ 1

I.  **LML'S ARGUMENTS FAIL TO RESCUE THE '220 PATENT.**

In its opening brief, JPMC showed that the '220 Patent claims unpatentable subject matter under Section 101 of the Patent Act because the claims are directed to an abstract idea. LML offers three broad responses, each of which is designed to distract the Court from the real issue, and each of which is wrong.[1]

*First*, LML denigrates three Supreme Court cases relied on by JPMC: *Gottschalk v. Benson*, 409 U.S. 63 (1972); *Parker v. Flook*, 437 U.S. 584 (1978); and *Diamond v. Diehr*, 450 U.S. 175 (1981). LML argues that these cases are "decades[] old" and are thus a "hoary line of Supreme Court cases." LML Patent Corp's Resp. to Motion for Summary Judgment ("Opp."), Dkt. No. 587, at 6-7. LML's argument is meritless. Only two months ago, the Supreme Court directed courts to "look[] to the guideposts in *Benson*, *Flook*, and *Diehr*" in resolving Section 101 issues. *Bilski v. Kappos*, 130 S. Ct. 3218, 3231 (2010). This Court could not ask for a fresher reinvigoration of the doctrine of these cases.

Equally lacking in merit is LML's effort to limit these decisions to patents that "attempt to patent a *mathematical formula*." Opp. at 7. In *Bilski*, claim 1 of the patent at issue was directed to "a series of steps instructing how to hedge risk," 130 S. Ct. at 3223. It did not recite a

---

[1] Further evidence of LML's efforts to distract the Court from the real issues stems from LML's strenuous argument that, by filing a 14-page brief with a 15-page Appendix, JPMC violated Local Rule CV-7(a)(1). *See* Opp. at 6. LML, however, fails to inform the Court of its own assumption that JPMC "intended all 29 pages to count against JPMorgan's summary judgment page count under Local Rule CV-7(a)(1) and that this was not an attempt to circumvent this rule. If, on the other hand, JPMorgan believes that only the first 15 pages count against your page limit, please let me know immediately so that we can arrange a meet and confer on an emergency motion to strike." E-mail from Peter Ayers, counsel to LML, to Paul Berman, counsel to JPMC, August 10, 2010 (Exh. 1 to Declaration of Trey Yarbrough). Because JPMC expressly incorporated the Appendix into its brief, Dkt. No. 581 at 4, and intended full compliance with the letter and spirit of the Court's rules, no response was needed. The purpose for the Appendix was to submit the argument in a concise form. JPMC agreed then and agrees now that 29 pages count.

1

mathematical formula, yet the Supreme Court unanimously concluded that it claimed an abstract idea. *Id.* at 3230. Indeed, *Bilski* described *Benson*, *Flook*, and *Diehr* as "precedents on the unpatentability *of abstract ideas*" and the "guideposts" that courts are to use in resolving Section 101 issues. *Id.* at 3231 (emphasis added). The Supreme Court has never suggested that mathematical algorithms are to be subjected to a different standard than other abstract ideas.

*Second*, LML belittles the machine-or-transformation test—a test created by the Supreme Court in *Benson* and whose importance was reaffirmed in *Bilski*. LML would have this Court ignore the Supreme Court's explicit statements in *Bilski* that the machine-or-transformation test remains "a useful and important clue, an investigative tool, for determining whether some claimed inventions are processes under § 101." *Bilski*, 130 S. Ct. at 3227.[2] LML would also ignore the Federal Circuit's post-*Bilski* decision in *King Pharmaceuticals, Inc. v. Eon Labs, Inc.*, Nos. 2009-1437, 2009-1438, 2010 WL 3001333, at *9 (Fed. Cir. Aug. 2, 2010), which noted the continued relevance of the machine-or-transformation test.

*Third*, throughout its brief, LML argues that the '220 Patent is valid because it is a practical solution to a real-world problem, suggesting that the patentees in *Bilski*, *Benson*, and *Flook* were not engaged in real-world problem-solving. S*ee, e.g.*, Opp. at 8. In so doing, LML seeks to enunciate its own test of Section 101 patentability without regard to the "useful and important clue" that was actually identified and used by the Supreme Court.

---

[2] *See also Bilski*, 130 S. Ct. at 3259 (Breyer, J. concurring) (observing that the Court intended "neither to de-emphasize the test's usefulness nor to suggest that many patentable processes lie beyond its reach").

**II. LIKE THE FINANCIAL TRANSACTION PATENT IN *BILSKI*, THE '220 PATENT CLAIMS UNPATENTABLY ABSTRACT SUBJECT MATTER.**

JPMC has proven that "[e]ach of the asserted claims at issue in this case are directed to an unpatentable abstract idea." Motion for Summary Judgment of Invalidity ("SJ Mot."), Dkt. No. 581, at 14. As LML acknowledges, its invention takes electronic signals representing "account information relating to a checking account" and produces an request to initiate an electronic funds transfer. Opp. at 21. At most, this changes one representation of the information into another representation of the exact same information. This is also what the Supreme Court in *Benson* held to be an unpatentable abstract idea. *Benson*, 409 U.S. at 71–72

The '220 Patent thus attempts to claim the same kind of financial transaction that *Bilski* prohibits. Indeed, the claim language in *Bilski* is eerily parallel with the claim language here. In *Bilski* the patent sought to claim "initiating" a "series of transactions" and "identifying" a group of "market participants," as part of a "series of steps instructing how to hedge risk," 130 S. Ct at 3223–4. The '220 Patent seeks to claim a "method of processing consumer payment" involving "receiving," "storing," "verifying," and "transmitting" either "account information" and/or "transaction information." '220 Patent, claim 67. As in *Bilski*, this effort to claim an insolubly broad, undifferentiated concept results in an "unpatentable abstract idea." 130 S. Ct. at 3231. The Supreme Court rejected the patent in *Bilski* because the core of the patent would pre-empt the use of a "fundamental economic practice." *Id.* Similarly, the core of the '220 Patent seeks to do the same thing: pre-empt the economic principle of using checking account information to effectuate payment for goods and services. At its heart, the '220 Patent claims moving account and transaction data from one place to another and, thus, at its heart, claims an abstract idea.

The dependent claims of the '220 Patent compound its Section 101 problems, because they do not limit the patent in any meaningful way. As in *Bilski*, where the "remaining claims"

3

were merely "broad examples" that "limit[ed] an abstract idea to one field of use or add[ed] token postsolution components," the '220 Patent's dependent claims add virtually nothing "to the underlying abstract principle," *id.*, and therefore cannot cure the Section 101 defect. Claim 69, for example, which ultimately depends from claim 67, provides simply that the "electronic funds transfer" referred to at the end of claim 67 "is an ACH transaction." This does nothing to fix the insolubly abstract effort to claim the concept of "receiving," "storing," "verifying," and "transmitting" "account information" and/or "transaction information" in claim 67.

**III.   LML FAILS TO SHOW THAT THE ASSERTED CLAIMS PASS THE "MACHINE-OR-TRANSFORMATION" TEST.**

LML simply fails in its attempts to show why the '220 Patent meets the "machine-or-transformation" test. Without analysis, LML argues that such a patent satisfies Section 101 of the Patent Act because it provides for a "transformation of . . . checking account data into another state—that is, into electronic signals used to effect an electronic funds transfer."[3] Opp. at 21. But that contention is wholly unsupported by the claim language. To the contrary, the claim language does not recite, and is not limited to, electronic or any other kind of information. Simply put, the '220 Patent's effort to claim "receiving," "storing," "verifying," and "transmitting" either "account information" and/or "transaction event information" requires no transformation; the patent claims abstract concepts as inputs and outputs, and offers no particularized invention as to what to do with those concepts.

---

[3] The '220 Patent's claims do not actually require the effectuation of an electronic funds transfer, only "transmitting [the information] to a financial institution to initiate an electronic funds transfer." *E.g.,* claim 67 (and its dependent claims). This Court's Claim Construction Order, Dkt. No. 578, construes this phrase accordingly, requiring "sending" the information "to a financial institution to begin an electronic funds transfer," but not requiring the financial institution actually to do anything with the information. Dkt. No. 578, at 46.

LML's "machine" arguments fare no better. Working from claim 67, which is directed broadly to "account information" and "transaction event information," LML argues that such a claim is in fact tied to machines consisting of a "concrete 'financial institution'" and "a concrete 'communication network.'" Opp. at 20. Simply calling something "concrete" or a "machine," however, does not make it so. LML does not cite the Federal Circuit's rejection of the notion that a business enterprise is a "machine." *In re Ferguson*, 558 F.3d 1359, 1364 (Fed. Cir. 2009); s*ee also Cybersource Corp. v. Retail Decisions, Inc.*, 620 F. Supp. 2d 1068, 1077 (N.D. Cal. 2009); *Ultramercial, LLC v. Hulu, LLC,* No. CV-09-6918 RGK, slip op. at 4 (C.D. Cal. Aug. 13, 2010).[4]

The recitations of "financial institution" and "communications network" do not in any event describe any *particular* inventive machine, a point that LML does not address. Moreover, they are in no way central to the invention; they are parts of the output or input of a claim, and do no more than "limit[] an abstract idea to one field of use or add[] token postsolution components." *Bilski*, 130 S. Ct. at 3231. They still leave in place a patent that impermissibly claims a monopoly on an abstract invention—the "receiving," "storing," "verifying," and "transmitting" of "account information" and "transaction event information."

In its Opposition, LML ultimately turns to a claim-by-claim analysis, which still fails to show that the asserted claims meet the "machine-or-transformation" test or otherwise claim patentable subject matter.

---

[4] LML seems to argue that *Cybersource* is no longer good law, because it was decided before the Supreme Court's *Bilski* decision. Opp. at 20. *Cybersource* is an excellent example of how to apply the "machine-or-transformation" test, which the Supreme Court did not change. *Ultramercial*, like *Cybersource*, concluded that reciting that a method is performed "over the Internet" does not tie a patent to a particular machine. *Ultramercial*, No CV-09-6918 RGK, slip op. at 4.

*Claims 69, 70 and 72 (depending from claim 67).* Other than calling various components "concrete" or "specific," LML says nothing to show that the claimed methods are tied to a particular machine or apparatus. For example, the mere recitations of a "financial institution" and "a communications network" cannot impart patentability to these claims, as discussed above.

Nor are these asserted claims tied to any *particular* communications network. According to the patent, the "communication network" can be "a telephone network," a "satellite or cellular communications" network, an "enhanced radio transmissions" network, or the Internet.[5] In its brief, LML further extends the definition to include "an Ethernet, an asynchronous transfer mode (ATM), one or more inter-networking or wireless communication network." Opp. at 20 n. 22 (quotation marks and emphasis omitted). According to the '220 Patent, the claim term "settlement network" is similarly general, including any "national authorization networks," "the ACH system," or any "other comparable systems *including but not limited to* ECCHO, the Cactus Switch, First Tennessee Bank, regional networks, the VISA network, and others,"[6] even encompassing "the Federal Reserve System."[7]

Further analysis confirms that these claims do not confer patentability. Claims 69 and 72 do not even mention a machine or network, merely specifying types of electronic funds transfers which are not required to be performed. And while claim 70 recites a list of possible networks, it is so broad and open-ended—including all "national authorization networks, regional

---

[5] '220 Patent, col. 7, l. 65 – col. 8, l. 1; col. 8, ll. 10–11; claim 74.

[6] '220 Patent, col. 3, ll. 34–40 (emphasis added).

[7] '220 Patent, col. 3, ll. 52–56; col. 4, ll. 61–65. Claim 67 does not recite *any* "communications network" in the step of "receiving transaction event information," confirming that there is nothing at all special or particular about the "communications network" recited in the step of "receiving account information."

authorization networks, and ACH network"—that it does not tie the claimed process to any one of them in particular.[8]

Nor do claims 69, 70, and 72 transform an article into a different state or thing. First, as the Federal Circuit observed in *Bilski* prior to Supreme Court affirmance, representations of "public or private legal obligations or relationships, business risks, or other such abstractions," like the legal obligations and relationships represented by the account information, are not "articles." *In re Bilski*, 545 F.3d 943, 963–64 (Fed. Cir, 2008), *aff'd on alternate grounds,* 130 S. Ct. 3218 (2010).[9] Second, while the method of claim 67 may "receive," "store," "verify" and "transmit" account information, it is never changed. In fact, it is essential to the claimed method that the account information *not* be transformed, and the method accordingly includes a verification step.[10] Moreover, dependent claims 69, 70, or 72 merely provide post-solution field-of-use limitations that specify the type of electronic funds transfer to be performed by the financial institution after the transmitting step. But, as with all of the asserted claims, no matter what the type of funds transfer, the account and transaction information remains unchanged.[11]

---

[8] The networks in these asserted claims also only identify how the account information gets to one of the "receiving" steps, or what can happen to the information after the "transmitting" step. As such these networks pertain to precisely the kind of pre-solution and post-solution activity that cannot rescue a claim from patent ineligibility. *Flook,* 437 U.S. at 589–90; *In re Schrader*, 220 F.3d 290, 294 (Fed. Cir. 1994).

[9] *See, e.g.*, *Cybersource*, 620 F. Supp. at 1074 ("[C]redit card accounts represent sets of legal rights and relationships, not 'articles.'"). This Court has also recognized that most electronic signals are not articles. *Abstrax, Inc. v. Dell, Inc.*, No. 2:07-cv-221-DF-CE, 2009 WL 3255085 at *3 (E.D. Tex. Oct. 7, 2009). In every case where the Federal Circuit has held that a process for manipulating electronic signals is patentable, the signals "clearly represented physical and tangible objects." *In re Bilski*, 545 F.3d at 962–63.

[10] Claim 67 also encompasses "receiving" the account information in electronic form, and "transmitting" it in electronic form, without change or transformation.

[11] Claim 74, which LML seeks to assert, merely recites that the communications network is "the Internet," which does not identify a machine, let alone a particular machine tied to the claimed (continued…)

7

*Claims 76, 78–80, and 82(depending from claim 75).* These claims are not tied to a particular machine or apparatus, and LML does not show otherwise. Even LML must admit that "a signed bank check," "a lock box location," and "a financial institution" are not machines "in the traditional sense." Opp. at 16. There is, however, no other "sense" that would make them "machines" that satisfy Section 101 of the Patent Code. LML cites no authority for the proposition that any "concrete thing" is automatically a machine.

Similarly, the "merchant database" of claim 80 is not a particular machine. For example, the dictionaries that LML cites define "database" with reference to collections or files of data, conspicuously omitting reference to any mechanical or electrical components.[12] And LML's argument that claim 82 is tied to "one of three particularized electronic settlement networks"[13] fails both because a "network" is not a machine and because the network of the claim can be *any* "national authorization network[]" or *any* "regional authorization network." '220 Patent, claim 82.

There is also no substance to LML's argument that claims 76, 78–80, and 82 transform "a signed bank check received via mail or lock box" into an "electronic funds transfer." The paper check is not in any way changed, altered, or transformed. At the end of the claimed process, it is still a bank check. And as discussed above, none of the steps of these asserted claims transforms or changes the information obtained from the check.

---

process. *See, e.g., Ultramercial*, No CV-09-6918 RGK, slip op. at 4. The inclusion of the Internet also does not transform the account information received by the claimed process; if anything it confirms that the input to the process and the output of the claimed process will both be electronic.

[12] *See* Opp. at 13 n. 8, (quoting IBM Dictionary of Computing (Pl's Exh. 10) and Microsoft Press Computer Dictionary (Pl's Exh. 11)).

[13] Opp. at 18 (alterations and internal quotation marks omitted).

*Claim 84 (depending from claim 83)*.  This claim includes "a signed bank check," "a lock box location," and "a financial institution," but this does not tie the claimed process to a particular machine or apparatus.  In addition, the "optical or magnetic reader" is a general machine, well-known before the '220 Patent, and performs pure data-gathering which, as the Federal Circuit has repeatedly held, "cannot make an otherwise non-statutory claim statutory." *In re Bilski*, 545 F.3d at 963.

The "central computer" of claim 84 is also not a particular machine.  According to the Court, it is "a computer, separate from either the customer's or merchant's financial institution(s), that can receive account information and send account information to a financial institution."  Claim Construction Order, Dkt. No. 578, at 53.  This includes any general-purpose computer so long as it does not belong to the customer or merchant's financial institutions.  This is a restriction on who *owns* the computer, not on how it could be particular and tied to the claimed process.  The claimed process, like the process of the other asserted claims, does not and is not intended to transform an article into a different state or thing.

*Claim 93*.  This claim is not automatically patent-eligible, as LML would have it, simply because it claims a "system" instead of a method.  *See* Opp. at 12.  The Federal Circuit has repeatedly held that Section 101 cannot be evaded through clever drafting.  *See, e.g.*, *In re Walter*, 618 F.2d 758, 768–69 (C.C.P.A. 1980).

Indeed, there is no support for LML's argument that the claim is tied to "a specially adapted terminal; a specially adapted communications interface; a specially adapted database; and a particular computer system."  There is nothing "specially adapted" or "particular" about any of the recited components.  For example, the Court has construed "terminal" to be any "device for entering information into a computer and receiving information from a computer."

9

Claim Construction Order, Dkt. No. 578, at 39. The Court accepted Plaintiff's "broad construction" because "the specification describes numerous terminals for entering information." *Id.* at 38 (quotation marks omitted), including terminals which "may, upon further development, be readily integrated in to the system of the present invention." '220 Patent, col. 9, ll. 56–58. As construed by the Court, the "terminal" of claim 93 is hardly a "particular" or "specially adapted" machine.

There is also nothing "specially adapted" about the communications interface or database of claim 93, and the only limitation on "central computer" is on who *owns* the computer, not on how it operates.

Finally, as with all of the other asserted claims, the "system" of claim 93 fails the transformation prong of the "machine-or-transformation" test. Simply put, the "system" of claim 93 does not transform anything, let alone an "article" required by the test.

## CONCLUSION

The Court should find that claims 69, 70, 72, 74, 76, 78, 79, 80, 82, 84, and 93 of United States Patent No. RE40,220 claim abstract ideas that are not patentable under Section 101 of the Patent Act. Based on that finding, the Court should grant JPMC's Motion for Summary Judgment of Invalidity and enter judgment in favor of JPMC and against LML on the claims in LML's complaint, and judgment in favor of JPMC and against LML on JPMC's counterclaim that these claims of the patent are invalid.

Dated: August 20, 2010  Respectfully submitted,

*/s/ Trey Yarbrough by permission*
George F. Pappas*
 gpappas@cov.com
Paul J. Berman*
 pberman@cov.com
Gregory S. Discher*
 gdischer@cov.com
Joseph P. Whitlock*
 jwhitlock@cov.com
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, D.C. 20004-2401
Telephone: 202-662-6000
Facsimile: 202-662-6291

Trey Yarbrough
 trey@yw-lawfirm.com
YARBROUGH ♦ WILCOX, PLLC
100 E. Ferguson, Ste. 1015
Tyler, TX 75702
Telephone: 903-595-3111
Facsimile: 903-595-0191

*Counsel for Defendants JPMorgan Chase & Co. and JP Morgan Chase Bank, NA*

## CERTIFICATE OF SERVICE

The undersigned certifies that all counsel of record who are deemed to have consented to electronic service are being served this 20th day of August, 2010, with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(a)(3). Any other counsel of record will be served by electronic mail, and/or first class mail on this same date.

*/s/ Trey Yarbrough*
Trey Yarbrough

11